<u>NOT FOR PUBLICATION</u>

**<u>UNITED STATES DISTRICT COURT</u>**
**<u>FOR THE DISTRICT OF NEW JERSEY</u>**

_____
                                      :
EUGENE SMITH,                         :
                                      :        Civil Action
             Plaintiff,               :        06-3168 (FSH)
                                      :
        v.                            :        **O P I N I O N**
                                      :
FRANK M. CROSE et al.,                :
                                      :
             Defendants.              :
_____:


**APPEARANCES:**

    EUGENE SMITH, Plaintiff <u>pro</u> <u>se</u>
    #159193
    Union County Jail
    Elizabeth, New Jersey 07201


**FAITH S. HOCHBERG, United States District Judge**

    Plaintiff EUGENE SMITH (hereinafter "Plaintiff") currently
confined at Union County Jail, Elizabeth, New Jersey (hereinafter
"Facility"), seeks to bring this 42 U.S.C. § 1983 action <u>in</u> <u>forma</u>
<u>pauperis</u> without prepayment of fees pursuant to 28 U.S.C. § 1915.
Plaintiff submitted Plaintiff's affidavit of indigence and
institutional account statement pursuant to 28 U.S.C. § 1915(a)
(1998) and Plaintiff's complaint (hereinafter "Complaint").
After carefully examining the Complaint, this Court (a) grants
Plaintiff <u>in</u> <u>forma</u> <u>pauperis</u> status, (b) dismisses certain
Plaintiff's claims for lack of standing and for failure to state

a claim upon which relief may be granted; and (c) proceeds
Plaintiff's remaining claims to the next stage.

**BACKGROUND**

Plaintiff asserts that, upon Plaintiff's arrival to the
Facility,  Plaintiff, a recovering drug addict, notified a staff
nurse at the Facility that Plaintiff "was on a methadone program
[and] that [Plaintiff] was taking 100 mg [of methadone] a day."[1]
Compl. § 6.  Plaintiff also alleges that Plaintiff notified the
nurse about Plaintiff's heart murmur, Plaintiff's anemic
condition and a pre-existing and treated ankle injury.  See id.

Plaintiff's claims mainly address matters related to
Plaintiff's medical conditions.  See generally, Compl.  With
respect to Plaintiff's addiction to methadone, Plaintiff alleges
that, "[a]fter [Plaintiff's] second day [at the Facility,] a
doctor came to see [Plaintiff and, responding to Plaintiff's
inquiry about Plaintiff's desire to have methadone prescribed and
administered to Plaintiff,] said that he would give [Plaintiff]
some 'kicking meds.'"  Id.  Plaintiff, however, was left
dissatisfied with the shortness of the doctor's visit, as well as

---

[1]
"Methadone is a synthetic opioid. [While qualified as a
controlled dangerous substance, methadone is] used medically as an
analgesic and in the treatment of narcotic addiction. . . .
Although not common, methadone is encountered on the illicit drug
market and has been associated with a number of overdose deaths."
See <<http://en.wikipedia.org/wiki/Methadone>>.

with the fact that the medications prescribed to Plaintiff by the
doctor consisted of vitamins, antihistamines and antacid tablets
rather than methadone, since Plaintiff believed that "any
competent doctor [would] say that these [prescribed medications
would] do[] nothing for [a] meth[adone] addict[ion] withdrawal."
Id.

     In addition, Plaintiff was dissatisfied with other medical
treatments because (a) the Plaintiff was not visited "two or
three [times] a day" to monitor Plaintiff's withdrawal from
methadone, (b) Plaintiff was visited by the doctor only if
Plaintiff put a request slip for such visit, and (c) after
Plaintiff was provided with a sleeping medication by a
psychiatrist, these medications were removed from Plaintiff by
the doctor as unauthorized for consumption at the Facility, thus
causing Plaintiff to suffer from continuous insomnia.  See id.
Furthermore, Plaintiff was insulted by the fact that the doctor
(a) was "mocking" Plaintiff, and (b) entered his opinion that
nobody ever died from effects of methadone withdrawal.  Id.

     In addition, Plaintiff also states Plaintiff's
dissatisfaction with the facts that (a) Plaintiff was given a
blood test only two months after Plaintiff's arrival to the
Facility (that is, when Plaintiff needed to remove a tooth)
rather than upon Plaintiff's arrival or shortly thereafter, and

(b) Plaintiff was never given an EKG test to monitor Plaintiff's heart murmur.  Id.

      Finally, with respect to non-medical matters, Plaintiff asserts that (a) starting from April 12, 2006, Plaintiff was placed in a cell built for two inmates but containing four bunks, thus  having "10 inches between the beds," and (b) Plaintiff, a follower of Ju'ma, was denied access to Ju'ma religious services. Id.

      Plaintiff seeks monetary remedy in the amount of $950,000.00 and enforcement of proper medical care for "all people," and not only "pregnant females" who are housed at the Facility.

**STANDARD OF REVIEW**

      In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a

claim, or seek monetary relief from immune defendants.  However,

in determining the sufficiency of a complaint, the Court must be

mindful to construe it liberally in favor of the plaintiff.  See

Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969

F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all

of the allegations in the complaint and reasonable inferences

that can be drawn therefrom, and view them in the light most

favorable to the plaintiff."  Morse v. Lower Merion School Dist.,

132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however,

lend credit to a pro se plaintiff's "bald assertions" or "legal

conclusions."  Id.  Thus, "[a] pro se complaint may be dismissed

for failure to state a claim only if it appears 'beyond doubt

that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief.'"  Milhouse v. Carlson,

652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404

U.S. 519, 520 (1972)).

Liberally construing Plaintiff's claims, this Court presumes

that Plaintiff alleges violation of Plaintiff's rights under the

First and Eighth Amendments to the United States Constitution.


**DISCUSSION**

**A.    Jus Tertii Claims**

Plaintiff has no standing to raise claims on behalf "all

other people" and/or any other "pregnant females" housed at the

Facility.     Under the "next friend" doctrine, standing is allowed to a third person only if this third person files and pursues a claim in court on behalf of someone who is unable to do so on his or her own.   The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case in controversy" requirement set forth in the Article III of Constitution.   See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).

The Whitmore Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: (1) "the 'next friend' must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action;" and (2) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest").   Id. at 163-64.   The burden is on the "next friend" to justify his/her status and, thereby, to obtain the jurisdiction of the federal courts. See id. at 164.

Since the Complaint is silent as to any incapacities of "all other people" or any other "pregnant female" at the Facility that might prevent these persons from bringing claims on their own,

this Court dismisses Plaintiff's claims brought on behalf of

these other parties for lack of standing.

**B.    Eighth Amendment Medical Care**

Plaintiff has a protected right in being incarcerated at a

place of confinement confirming to the standards set forth by the

Eighth Amendment.  The Constitution "does not mandate comfortable

prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but

neither does it permit inhumane ones, and it is now settled that

"the treatment a prisoner receives in prison and the conditions

under which he is confined are subject to scrutiny under the

Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993).

In its prohibition of "cruel and unusual punishments, the Eighth

Amendment . . . imposes duties on [prison] officials, who must

provide humane conditions of confinement; prison officials . . .

must take reasonable measures to guarantee the safety of the

inmates."  Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see

Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210,

225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The

Eighth Amendment prohibits conditions which involve the

unnecessary and wanton infliction of pain or are grossly

disproportionate to the severity of the crime warranting

imprisonment.  See Rhodes, 452 U.S. at 346, 347.  The cruel and

unusual punishment standard is not static, but is measured by

"the evolving standards of decency that mark the progress of a

7

maturing society."  Rhodes, 452 U.S. at 346 (quoting Trop v.

Dulles, 356 U.S. 86, 101 (1958)).

     Thus, to prevail on a medical care claim under the Eighth

Amendment, an inmate must show that the defendants were

deliberately indifferent to the inmate's serious medical needs.

See Estelle v. Gamble, 429 U.S. 97; Rouse v. Plantier, 182 F.3d

192, 197 (3d Cir. 1999).  Persistent severe pain qualifies as a

serious medical need, plus a medical need is serious where it

"has been diagnosed by a physician as requiring treatment or is .

. . so obvious that a lay person would easily recognize the

necessity for a doctor's attention."  Monmouth County

Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347

(3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

     "Deliberate indifference" exists "where [a] prison official:

(1) knows of a prisoner's need for medical treatment but

intentionally refuses to provide it; (2) delays necessary medical

treatment based on a non-medical reason; or (3) prevents a

prisoner from receiving needed or recommended medical treatment."

Rouse, 182 F.3d at 197.  Furthermore, deliberately delaying

necessary medical diagnosis for a long period of time in order to

avoid providing care constitutes deliberate indifference that is

actionable.  See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993).

Deliberate indifference is also evident where officials erect

arbitrary and burdensome procedures that result in interminable

delays and denials of medical care to suffering inmates.  See

Lanzaro, 834 F.2d at 346-47.

However, neither inconsistencies or differences in medical

diagnoses, nor such actions as refusal to consider inmate's

self-diagnoses, to summon the medical specialist of the inmate's

choice, to provide the inmate with the medications the inmate

prefers, to perform tests or procedures that the inmate desires,

to explain to the inmate the reason for medical action or

inaction, or to train the inmate to perform medical procedures

can amount to cruel and unusual punishment.  See White v.

Napoleon, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over

medical judgment do not state Eighth Amendment claims).

Applying this standard to Plaintiff's claims, this Court

finds no constitutional violations with respect to Plaintiff's

medical treatment.

### 1.    Methadone Withdrawal

While Plaintiff might disagree with the choice of

medications selected for Plaintiff's treatment during Plaintiff's

withdrawal from drug addiction, such disagreement--same as

Plaintiff's dissatisfaction--does not amount to a constitutional

claim.  See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) (mere

disagreements over medical judgment do not state Eighth Amendment

claims); Jones v. Lockhart, 484 F.2d 1192 (8th Cir. 1973)

(allegations of mere differences of opinion over matters of

medical judgment fail to state a federal constitutional

question); Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970) (a

difference of opinion between physician and patient did not

sustain a claim under § 1983; the conduct must be so harmful that

it should be characterized as a barbarous act that shocked the

conscience); Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969)

(mere negligence does not suffice to support a § 1983 action);

Hasty v. Johnson, 103 Fed. Appx. 816 (5th Cir. 2004) (prisoner

failed to state a claim for deliberate indifference to his

medical needs where he alleged that medical personnel provided

him with purportedly less efficacious drugs for gastroesophageal

reflux disease; the decisive fact was that he received "a"

treatment); Goff v. Bechtold, 632 F. Supp. 697 (S.D. W. Va. 1986)

(denial of preferred course of treatment does not infringe

constitutional rights).

     Moreover, a refusal to disburse controlled substance to

inmates as part of the inmate's treatment could be well warranted

within the framework of a correctional facility in view of

various legitimate safety concerns unique to such environment.

> [While] the court does not doubt that the plaintiff
> suffered pain[,] the constitution does not . . .
> guarantee pain-free medical treatment, and the
> defendants provided the plaintiff with medication . . .
> .  While the plaintiff might have preferred stronger
> medication, [the plaintiff's] mere disagreement with
> [the plaintiff's] medical treatment does not state a
> constitutional claim.  Indeed, prison doctors are
> understandably hesitant to prescribe powerful narcotics
> to prisoners except when absolutely necessary.

> Finally, a claim regarding [the matter of validity of a medical opinion] is one of medical negligence, not deliberate indifference, and negligent conduct by prison officials does not rise to the level of a constitutional violation. [See] Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986).

Rochell v. Corr. Med. Servs., 2006 U.S. Dist. LEXIS 37943 (N.D. Miss. Apr. 10, 2006).

Therefore, Plaintiff's methadone-related claims should be dismissed for failure to state a claim upon which relief may be granted.

**2.  Other Medical Claims**

Petitioner's other medical claims similarly lack merit.  For instance, while Petitioner might have been substantially inconvenienced by Petitioner's insomnia, Petitioner's reduced ability to fall asleep does not amount to a serious medical need. See Universal Calvary Church v. City of New York, 2000 U.S. Dist. LEXIS 15153 (S.D.N.Y. Oct. 13, 2000) (insomnia does not qualify as a "serious injury"); cf. Hutchinson v. Civitella, 2003 U.S. Dist. LEXIS 15417 (S.D.N.Y. Sept. 4, 2003) (occasional chest pain, nausea, inability to keep food down, rapid weight loss, dizziness, light-headedness, unsteadiness and emotional distress cannot qualify as "a condition of urgency, one that may produce death, degeneration or extreme pain") (quoting Hathaway, 37 F.3d at 66); Gibson v. McEvers, 631 F.2d 95 (7th Cir. 1980) (a failure

to treat symptoms of common cold does not violate Eighth Amendment).

Similarly, Plaintiff's disappointment with rare frequency of doctor's visits or non-administration of tests that Plaintiff believed would be beneficial for assurances of Plaintiff's future good health does not state a cognizable claim under § 1983.  See Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st Cir. 2005) (a doctor's failure to respond to certain request  for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment); Smith v. Sator, 102 Fed. Appx. 907 (6th Cir. 2004) (where a prisoner alleged that defendants did not provide various specialized medical tests that the prisoner found to be necessary based on his reading of medical literature, the court held that the complaint was frivolous because refusal to provide specialized tests amounted to nothing more than a difference of opinion regarding the medical diagnosis and treatment and did not rise to the level of an Eighth Amendment violation); Lopez v. Kruegar, 1990 U.S. Dist. LEXIS 6808 (E.D. Pa. June 4, 1990) (where plaintiff stated that he was receiving medication but felt that additional medical tests should be taken, his allegations were directed at the wisdom or quality of treatment and did not state a claim); Coleman v. Crisp, 444 F. Supp. 31 (W.D. Okla. 1977) (difference of opinion between plaintiff and doctors

12

concerning availability of treatment and medication did not establish violation of constitutional right or sustain claim); Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be held deliberately indifferent to an existing serious medical condition, not a speculative future medical injury); McNeil v. Redman, 21 F. Supp. 2d 884 (C.D. Ill. 1998) (an inmate has no constitutional right to see a doctor on demand; the decision whether to summon a doctor, like the question of whether a certain diagnostic technique or form of treatment should be prescribed, "is a classic example of a matter for medical judgment") (quoting Estelle, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251); Ford v. Lane, 714 F. Supp. 310 (N.D. Ill. 1989) ("The question whether an X-ray--or any additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment") (quoting Estelle, 429 U.S. at 107); Goff, 632 F. Supp. 697 (denial of preferred course of treatment does not infringe constitutional rights).

Therefore, these claims should also be dismissed for failure to state a claim upon which relief may be granted.

**C.      Eighth Amendment Conditions of Confinement**

Plaintiff's allegations with respect to Plaintiff's

conditions of confinement unrelated to medical care equally fail

to indicate facts constituting cruel and unusual punishment

necessary to sustain a claim under 42 U.S.C. § 1983.  It appears

that this class of Plaintiff's allegations could be subdivided

into two groups: (a) harassment of Plaintiff through utterances

made by the doctor, which Plaintiff found offensive; and (b)

Plaintiff's placement in a cell designed for two inmates but

housing four.

**1.   Harassments**

Plaintiff'S Complaint specifies two occasion that could be

construed as Plaintiff's allegation of harassment: (i) the

statement made by the doctor that nobody dies from symptoms of

methadone withdrawal, and (ii) an unspecified act of "mockery."

It is well established, however, that acts of verbal

harassment, harassment by laughter or by a facial expression

cannot qualify as violations of the Eighth Amendment.  See

Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D.

Dec. 8, 2005) ("[V]erbal harassment and taunting is neither

'sufficiently serious' nor 'an unnecessary and wanton infliction

of pain' under the common meaning of those terms. 'Verbal

harassment or profanity alone . . . no matter how inappropriate,

unprofessional, or reprehensible it might seem,' does not

14

constitute the violation of any federally protected right and

therefore is not actionable under [Section] 1983") (quoting

Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and

citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me.

2005)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951,

at *8-9 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does

not give rise to a constitutional violation[; even if it is]

inexcusable and offensive, [it] do[es] not establish liability

under section 1983") (quoting McBride v. Deer, 240 F.3d 1287,

1291 n.3 (10th Cir. 2001) and citing Moore v. Morris, 116 Fed.

App'x 203, 205 (10th Cir. 2004); Freeman v. Arpaio, 125 F.3d 732,

738 (9th Cir. 1997); Frazier v. Fairhaven Sch. Comm., 276 F.3d 52

(1st Cir. 2002) (plaintiff failed to state a claim upon which

relief may be granted when the plaintiff alleged that the

defendant official was continually "leering," "scowling," and

"pointing" at the plaintiff); Abuhouran v. Acker, 2005 U.S. Dist.

LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well

established . . . that . . . verbal harassment, . . . standing

alone, do[es] not state a constitutional claim") (citing Dewalt

v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer,

180 F.3d 699, 706 (5th Cir. 1999); Maclean v. Secor, 876 F. Supp.

695, 698 (E.D. Pa. 1995)); Collins v. Cundy, 603 F.2d 825 (10th

Cir. 1979) (prisoner's claim that defendant laughed at prisoner

and threatened to hang him failed to state a claim cognizable

under § 1983).

Therefore, Plaintiff's allegations with respect to any

statements, mockery, laughter or expressions of prison officials

that Plaintiff found unpalatable fail to state a claim upon which

relief may be granted.

### 2.    Cell Overpopulation

A non-discriminatory practice of cell overpopulation does

not amount to cruel and unusual punishment.  See North v. White,

152 Fed. Appx. 111 (3d Cir. 2005) (finding no Eighth Amendment

violation where, due to a temporary influx of inmates, the

facility resorted to triple-celling[2] of one-third of inmates for

a month, since the facility was otherwise well maintained; and

ventilation, light, sanitation and food met applicable minimal

standards); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005)

(conducting a nearly-identical inquiry with respect to pre-trial

detainees under the Due Process Clause and finding that

two-to-seven-month of triple-celling in a cell designed for one

did not constitute a violation, and relying on Bell v. Wolfish,

---

[2]

The term "triple-celling" indicates an arrangement where "the
newest arrival is required to sleep on a mattress on the floor
until one of his cellmates is released or moved.  That frees a bunk
for the inmate who had been on the floor mattress, and any new
arrival in that cell would then take his place on the floor
mattress. . . . The [floor] mattress can be placed under the lower
bunk during the day."  See Hubbard v. Taylor, 399 F.3d 150, 154 (3d
Cir. 2005).

441 U.S. 520 (1979), the case where no violation was found with respect to 30-to-60-days confinement of two inmates in a "double-bunk" cell originally designed for one); see also Brookins v. Williams, 402 F. Supp. 2d 508 (D. Del. 2005) (finding no constitutional violation where, over the period of five days, an inmate was placed in a cell with two other inmates and forced to eat near the toilet, not allowed to exercise, and did not receive medical care for his mental illness and diabetes).

Since Plaintiff's Complaint is silent as to any alternative bedding arrangements being available to--but not used by--the prison officials, or as to any substandard physical conditions of confinement, and since the Complain does not allege that Plaintiff was singled out for this overpopulation-caused celling practice, Plaintiff's placement in a cell designed for two but containing four beds cannot amount to an act of cruel and unusual punishment.  This Court has no reason to conclude that the sole fact that Plaintiff's bed was located ten inches away from those of Plaintiff's cell-mates deprived Plaintiff of "the minimal civilized measure of life's necessities," or that prison officials "acted . . . with deliberate indifference to a substantial risk of harm to [Plaintiff's] health or safety." Compare Fuentes v. N.J. Office of the Pub. Defenders, 2006 U.S. Dist. LEXIS 1147 (D.N.J. Jan. 11, 2006) (finding that a violation could possibly be detected where, during the period of three

17

months, the inmates were forced to sleep on thin plastic

mattresses on a cold and filthy concrete floor, with poor

ventilation and in unsanitary conditions, and these conditions

led to spread of infections and disease).

Therefore, Plaintiff's conditions of confinement allegations

fail to state a claim upon which relief may be granted.


**D.   First Amendment Claim**

Finally, Plaintiff alleges that Plaintiff, a Ju'ma follower,

is not allowed to attend Ju'mah service.  This Court interprets

Plaintiff's assertion as a claim for violation of Plaintiff's

First Amendment right to free religious exercise.

To establish a violation of his or her right to freely

exercise his or her religion, an inmate must satisfy the

"reasonableness test" set forth in Turner v. Safley, 482 U.S. 78,

89 (1987), and O'Lone v. Estate of Shabazz, 482 U.S. 342, 349

(1987).  The standards delineated in Turner and O'Lone indicate

that, when a prison regulation encroaches upon prisoners' rights

to free exercise of their religion, the regulation is valid if it

is reasonably related to a legitimate penological interest.  See

Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349.  Thus, Plaintiff

may prevail on Plaintiff's claim only if Plaintiff shows that the

restrictions on Plaintiff's religious practices are not

reasonably related to the prison's legitimate penological

interest.  See Robinson v. Ridge, 996 F. Supp. 447, 450 (E.D. Pa. 1997), aff'd, 175 F.3d 1011 (3d Cir. 1999).

The reasonableness standard involves examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.

In this case, Plaintiff's basic allegations assert merely that Plaintiff was prevented from attending Ju'ma services merely because of Plaintiff's pre-existing ankle injury.  See Compl. § 6.  Therefore, Plaintiff might be able to state a sufficient First Amendment free exercise claim.  Accordingly, the Court will allow this claim to proceed at this preliminary stage.


**CONCLUSION**

For the foregoing reasons, Plaintiff's application to proceed in forma pauperis is granted, Plaintiff's Eighth Amendment claims are dismissed for failure to state a claim upon

which relief may be granted, Plaintiff's <u>jus</u> <u>tertii</u> claims are dismissed for lack of standing, and Plaintiff's First Amendment Claims may proceed past the <u>sua</u> <u>sponte</u> dismissal stage.

An appropriate Order accompanies this Opinion.


                                        <u>  /s/ Faith S. Hochberg  </u>
                                        **United States District Judge**


Date:   September 7, 2006

20